UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRAY ARTHUR RYAN,

                Petitioner,

Case Number: 2:19-CV-12838
HON. GEORGE CARAM STEEH

v.

ADAM DOUGLAS,[1]

                Respondent.

_____/

## OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS (ECF 1); (2) DENYING CERTIFICATE OF APPEALABILITY; AND (3) GRANTING LEAVE TO PROCEED *IN FORMA PAUPERIS ON APPEAL*

Petitioner Tray Arthur Ryan, currently in the custody of the Michigan Department of Corrections, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  He challenges his convictions for armed robbery, Mich. Comp. Laws § 750.529, first-degree home invasion, Mich. Comp. Laws § 750.110a(2), and unlawful imprisonment, Mich. Comp. Laws § 750.349b. For the reasons discussed, the Court denies the petition and

---

[1]The proper respondent in a habeas case is the state officer having custody of the petitioner.  See Rule 2, Rules Governing Section 2254 Cases.  Petitioner is currently housed at the Saginaw County Correctional Facility.  The warden of that facility is Adam Douglas.  The Court orders the case caption amended to substitute Adam Douglas as the respondent.

declines to issue a certificate of appealability.  The Court grants Petitioner

leave to proceed *in forma pauperis* on appeal.

## Background

Petitioner's convictions arise from an armed robbery in Charlotte,

Michigan.  Petitioner was tried before a jury in Eaton County Circuit Court.

The Michigan Court of Appeals described the relevant facts, which are

presumed correct on habeas review, *see* 28 U.S.C. § 2254(e)(1); *Wagner

v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009), as follows:

> This case arises from an armed robbery that took place in
> Charlotte in July 2015.  The principal complaining witness
> testified that he was at home working on his bathroom in the
> company of his son and the mother of his daughter.  At 10:15
> or 10:20 p.m., he went outside to get a board and was
> approached by two men.  The complainant stated that a
> fluorescent light illuminated the area, and described the two
> men as "one ... shorter than me and one ... taller than me."
> The complainant identified defendant as the taller of his
> assailants, and added that he was able to see defendant's
> face. According to the complainant, the two men "pulled pistols
> out" and demanded that he "be quiet and get on the ground."
> The complainant testified that he complied while feeling great
> fear, upon which the shorter man put his boot to the
> complainant's head while defendant tied him up.
>
> According to the complainant, the shorter man threatened to kill
> the complainant's son if the complainant did not disclose the
> location of $10,000.  The complainant admitted that he did
> have $10,000 in cash at the time.  The complainant testified
> that the shorter man entered the house while defendant
> threatened to kill him, and that defendant followed the shorter

man into the house after approximately 30 seconds.  The
complainant was able to break free from his restraints.  He
started running away and defendant appeared to give chase,
but then defendant ran past him.  The complainant stated that
he continued to run, and was able to flag down a neighbor in a
car who allowed him to use his phone to call 9-1-1.

*People v. Ryan*, No. 335516, 2018 WL 791417, at *1 (Mich. Ct. App. Feb.
8, 2018)

Petitioner was convicted of armed robbery, first-degree home

invasion, and unlawful imprisonment.  Petitioner's convictions were

affirmed on direct appeal.  *People v. Ryan*, 2018 WL 791417; *People v.

Ryan*, 503 Mich. 860 (2018).

Petitioner then filed the pending habeas corpus petition.  He raises

these claims:

I.      The victim's in-court identification was a result of a
        suggestive pretrial identification procedure.

II.     Appellant was denied a fair trial because of the
        introduction of the evidence that did not comport
        with MRE 404(b), and defense counsel's failure to
        object was ineffective assistance of counsel.

III.    Appellant's constitutional right to due process was
        violated because of prosecutorial misconduct, and
        defense counsel was ineffective for failing to object to the
        prosecutorial misconduct.

In response, the warden argues that some of the claims presented

here are barred from consideration because they are procedurally

-3-

defaulted and that all of Petitioner's claims are meritless.

The doctrine of procedural default is applicable when a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "an independent and adequate state ground to foreclose review of the federal constitutional claim." *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2005). The Court finds it unnecessary to address the procedural question because it is not a jurisdictional bar to review of the merits, *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005), and "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits," *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing Lambrix v. Singletary, 520 U.S. 518, 525 (1997)). The procedural defense will not affect the outcome of this case, and it is more efficient to proceed directly to the merits.

## I. Standard

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under the AEDPA, a state prisoner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims –

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'"  *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)).  "[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003), quoting *Williams*, 529 U.S. at 413.  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Harrington v. Richter*, 562 U.S.

86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Greene v. Fisher*, 565 U.S. 34, 38 (2011). Section 2254(d) "does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). "[W]hile the principles of "clearly established law" are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007).

A federal habeas court must presume the correctness of state court factual determinations. See 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. Id.

## II. Discussion

### A.

In his first claim, Petitioner argues that Mark Eitniear, Sr.'s in-court identification of Petitioner as one of the perpetrators should have been suppressed because it was tainted by an impermissibly suggestive identification procedure. Petitioner argues that the encounter was suggestive and corrupted Eitniear's in-court identification of him.

The trial court held a hearing in response to Petitioner's motion to suppress Eitniear's identification testimony. Eitniear, the only witness, testified that he was in a sheriff's deputy's car for approximately two hours after police responded to his 911 call. At approximately 2:30 or 3:00 a.m., police took Eitniear to a location where "they were gonna try to drive by ... the perpetrator and see if ... we could identify him through a drive-by." (ECF No. 10-8, PageID.262.) The police drove past the suspect at approximately 30 or 35 m.p.h., and never stopped the vehicle. It was dark and Eitniear could not see the suspect clearly. Other than determining that the suspect appearing to be "the right size," Eitniear could further identify the suspect as the perpetrator. (*Id.* at 264.) Eitniear also testified that he attended all of the pretrial hearings connected with the criminal proceeding.

Due process requires suppression of eyewitness identification evidence "when law enforcement officers use an identification procedure that is both suggestive and unnecessary." *Perry v. New Hampshire*, 565 U.S. 228, 239 (2012).  A pretrial identification violates due process where: (1) the identification procedure is impermissibly suggestive; and (2) the suggestive procedure gives rise to a very substantial likelihood of misidentification.  *Neil v. Biggers*, 409 U.S. 188, 197-98 (1972); *Manson v. Braithwaite*, 432 U.S. 98, 114 (1977) (due process challenges to identification procedures are reviewed using *Biggers*' test).  But the suppression of the tainted identification is not necessarily the inevitable consequence.  *Braithwaite,* 432 U.S. at 112-113.  Instead, the Court has held that determining whether to suppress the identification should be done on a case-by-case basis.  *Id.* at 116; *see also Biggers*, 409 U.S. at 201.

The danger is that an initial improper identification procedure will result in misidentification and will unduly influence later investigation.  *United States v. Wade*, 388 U.S. 218, 229 (1967).  "[T]he dangers for the suspect are particularly grave when the witness' opportunity for observation was insubstantial, and thus his susceptibility to suggestion is the greatest."  *Id.*  Therefore, "reliability is the linchpin in determining the

admissibility of identification testimony.  *Brathwaite*, 432 U.S. at 114.

The Michigan Court of Appeals affirmed the trial court's denial of

Petitioner's motion to suppress, explaining, in relevant part:

> The fairness of an identification procedure is evaluated in light of the "totality of the circumstances" to determine whether the procedure was so impermissibly suggestive as to render the identification irreparably unreliable.  *People v. Davis*, 146 Mich. App. 537, 548; 381 N.W.2d 759 (1985).  Where a defendant is able to show that an identification procedure was suggestive to the extent that it would likely lead to a misidentification, in-court identification should not follow unless the prosecution can establish an independent basis for the identification.  *People v. Barclay*, 208 Mich. App. 670, 675; 528 N.W.2d 842 (1995).
>
> Improper suggestion commonly comes about because of three things.  First, the witness when called by the police or prosecution either is told or believes that the police have apprehended the right person.  Second, if the witness is shown only one person or a group in which one person is singled out in some way, he is tempted to presume that he is the person.  Third, ... eyewitness identification has inherent weaknesses from the standpoint of the witness's problems of sensation, retention, etc., and the similarity in appearance of people. ...
>
> In this case, defendant emphasizes that the drive-by exposed the complainant to only one suspect, and asserts that the police suggested to the complainant that the man they had detained in the parking lot was the perpetrator of the robbery.  Although the complainant did agree that the police had asked him to look at a suspect, he clarified, when asked if the police ever said something along the lines of "this is the guy," that "[t]hey never said nothin' like that."  Further, defendant nowhere suggests that the trial court erred in recognizing that the police may conduct on-the-scene confrontations early in an investigation in order that they might immediately understand if

they have a plausible suspect in view.  *See People v. Winters*, 225 Mich. App. 718, 728; 571 N.W.2d 764 (1997) ("[O]n-the-scene confrontations are ... indispensable ... because they permit the police to immediately decide whether there is a reasonable likelihood that the suspect is connected with the crime and subject to arrest, or merely an unfortunate victim of circumstance.").

Moreover, the complainant expressed concern that the speed of the vehicle seemed excessive for the intended purpose, and also that the area was not well lit.  Had the complainant been unduly convinced that the police had the right man, he presumably would have ended up with neither concern. Indeed, that the drive-by procedure was not overly suggestive is apparent from the complainant's report on that occasion only that the suspect's size and build appeared familiar, while feeling unable to offer information concerning the suspect's clothing or otherwise more positively identify him, thus showing that the complainant was not using the police's discovery and detention of a suspect to fill in any gaps in his recollections.

Defendant's arguments concerning the complainant's attendance at pretrial court proceedings are even less persuasive.  Not in dispute is that the complainant had a right to attend such proceedings along with the rest of the general public.  And that the victim of a crime will in the normal course see the suspected perpetrator in court is obvious, if only to identify him at trial, and also, where applicable, the preliminary examination.  Defendant does not explain why a witness's exposure to a suspect in court in pretrial proceedings transforms that setting into an impermissibly suggestive one. And, obviously, there was no police or other investigative misconduct involved in the complainant's decision to attend pretrial proceedings relating to the crime against him.

For these reasons, defendant has failed to show that the trial court erred in characterizing any concerns relating to suggestiveness in the complainant's identification of him as one

of his assailants as properly relating to the weight of that evidence, not its admissibility.

*Ryan*, 2018 WL 791417, at *3-4.

The Michigan Court of Appeals' determination that the identification procedure was not impermissibly suggestive was not contrary to or an unreasonable application of Supreme Court precedent.  An on-the-scene identification involving only a single suspect does not violate due process. *See Bruner v. Perini*, 875 F.2d 531, 534-35 (6th Cir. 1989).  Even assuming that the identification procedure was impermissibly suggestive, Petitioner has failed to show the identification was not reliable.  Eitniear testified that the area outside his home was sufficiently illuminated for him to see Petitioner's face.  Ultimately, the reliability of the in-court identification was for the trier of fact to decide.  Habeas relief is denied on this claim.

## B.

Petitioner's second claim concerns prosecution witness Jesse Lee Yoder's statement implicating Petitioner in an unrelated robbery.  Yoder testified that he was in a boot camp serving part of his sentence for unspecified criminal convictions when he contacted the prosecutor's office with information regarding Petitioner's case.  He explained that he decided

-11-

to contact police because, as Yoder phrased it, "defendant robbed my family." (ECF No. 10-20, PageID.1265.)

Defense counsel objected immediately to Yoder's statement and the jury was excused. Defense counsel asked that the statement be stricken. The prosecutor agreed. When the jury returned, the trial court instructed the jury that Yoder's response was stricken and should not be considered or discussed by the jury. The trial court further instructed that any prior relations between Petitioner and Yoder or Yoder's family were "simply allegations" with no corroboration. (*Id.* at 1275.)

Petitioner argues that despite the cautionary instruction, his trial was rendered fundamentally unfair by Yoder's stricken testimony, the testimony violated Michigan Rules of Evidence, and counsel was ineffective for failing to request a mistrial. The Michigan Court of Appeals held that the trial court adequately recognized and correctly addressed Yoder's testimony:

> "A mistrial should be granted only for an irregularity that is prejudicial to the rights of the defendant, and impairs his ability to get a fair trial." *Haywood*, 209 Mich. App. at 228 (citations omitted). However, not every instance of mention before a jury of some inappropriate subject matter warrants a mistrial. Specifically, "an unresponsive, volunteered answer to a proper question is not grounds for the granting of a mistrial." *Id.* In this case, the witness volunteered his statement about defendant having robbed his family in response to proper inquiry into his motive for testifying. Indeed, the prosecutor did not expect such

response.

We conclude that the utterance giving rise to this issue, "defendant robbed my family," without more, was not seriously prejudicial.  No details about that event were disclosed, leaving the jury with no basis for forming an opinion on the nature or seriousness of the matter.  Also militating against any undue prejudice from the few words of improper testimony was the trial court's characterization of them as referring to mere uncharged, uncorroborated "allegations" involving "past relations" between defendant and the witness or his family. And regardless of what the jurors might have imagined was behind what the witness said, the court's instructions that the witness's statement was stricken and "not ... appropriate" for them to discuss or consider should have eliminated any unfair prejudice.  "Jurors are presumed to follow instructions, and instructions are presumed to cure most errors."  *People v. Petri*, 279 Mich. App. 407, 414; 760 N.W.2d 882 (2008). Even if the jurors might nonetheless have retained some lingering memory relating to the improper testimony through its deliberations, a criminal defendant is entitled to a fair trial, not necessarily a perfect one. ... Because the imperfection here was not an irregularity so prejudicial as to impair defendant's ability to receive a fair trial, the sustaining of the defense objection and admonishment to the jury to disregard it were sufficient corrective actions, and a motion for a mistrial would properly have been denied.

*Ryan*, 2018 WL 791417, at *4-5.

The Michigan Court of Appeals' decision is reasonable.  The trial court struck the testimony and carefully instructed the jury not to consider the stricken testimony.  The Court assumes, in the absence of evidence to the contrary, that the jury followed those instructions.  *Weeks v. Angelone*,

528 U.S. 225, 234 (2000); *Richardson v. Marsh*, 481 U.S. 200, 206 (1987)
(noting the "almost invariable assumption of the law that jurors follow their
instructions"). Petitioner provides no reason to believe otherwise. Under
these circumstances, the Michigan Court of Appeals reasonably
determined that Yoder's brief, isolated, and stricken statement did not
render Petitioner's trial fundamentally unfair. Further, to the extent that
Petitioner argues that the admission of this evidence violated Michigan
Rules of Evidence, he fails to allege a basis for federal habeas corpus
relief. Errors of state law, particularly the alleged improper admission of
evidence, do not allege a constitutional violation upon which habeas relief
may be granted. *See Estelle v. McGuire*, 502 U.S. 62 (1991).

Petitioner also argues that defense counsel was ineffective for failing
to move for a mistrial on the basis of Yoder's testimony. An ineffective
assistance of counsel claim has two components. A petitioner must show
that counsel's performance was deficient and that the deficiency prejudiced
the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

The Michigan Court of Appeals held that counsel was not ineffective
for failing to advance a meritless position. In addition, the state court held
that, "even if defense counsel had reason to believe that a request for a

mistrial might have been granted, counsel might have been sufficiently satisfied at how well things were going for the defense up to that time that counsel preferred not to risk starting anew."  *Ryan*, 2018 WL 791417, at *5.

Defense counsel's objection to Yoder's testimony was sustained. Defense counsel successfully argued that the statement be stricken and that the trial court instruct the jury not to consider the statement.  As discussed, there is no indication that the jury failed to follow the instruction. This record supports the court of appeals' holding that defense counsel was not deficient.

## C.

Petitioner next argues that the prosecutor committed misconduct by shifting the burden of proof during closing argument.  He also claims that defense counsel was ineffective for failing to object.

The "clearly established Federal law" relevant to a habeas court's review of a prosecutorial misconduct claim is the Supreme Court's decision in *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).  *Parker v. Matthews*, 567 U.S. 37, 45 (2012).  In *Darden*, the Supreme Court held that a "prosecutor's improper comments will be held to violate the Constitution only if they 'so infected the trial with unfairness as to make the resulting

conviction a denial of due process.'" *Id.* quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). This Court must ask whether the Michigan Court of Appeals' decision denying Petitioner's prosecutorial misconduct claims "'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Id.* at 2155, quoting *Harrington*, 562 U.S. at 103.

Petitioner specifically challenges this portion of the prosecutor's closing argument:

> Ladies and gentlemen, one of the things that you're gonna have to decide, again, as you weigh witness credibility, is why would someone lie. Why would Marke Eitniear and Ruby Fox, and Mark Eitniear, Junior lie about this? They have – they have nothing to gain. To go through all of this, nothing to gain.

(ECF No. 10-21, PageID.1440.)

The Michigan Court of Appeals held that the prosecutor did not argue that the "defense was obliged or otherwise expected to introduce evidence relating to the credibility of" prosecution witnesses. *Ryan*, 2018 WL 791417 at *5. Instead, the prosecutor properly argued credibility based on the evidence presented and did not suggest that he has personal knowledge about the credibility of prosecution witnesses. *Id.* The state

-16-

court further held that the prosecutor's argument was a proper response to the defense strategy of mistaken identity and the defense's challenge to the credibility of prosecution witnesses.  *Id.*

The Michigan Court of Appeals' decision was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent. The prosecutor explored witnesses' motives for testifying, highlighted weaknesses in the defense, and argued reasonable inferences from the evidence.  These are all proper arguments.  *See Bates v. Bell*, 402 F.3d 635, 646 (6th Cir. 2005) ("[P]rosecutors can argue the record, highlight the inconsistencies or inadequacies of the defense, and forcefully assert reasonable inferences from the evidence.").  Thus, this Court finds that the state court's decision that no prosecutorial misconduct occurred was not "so far out of line with the very general standard" established in Darden as to entitle the petitioner to habeas relief.  *Davis v. Lafler*, 658 F.3d 525, 535 (6th Cir. 2011) (en banc).  Further, because the prosecutor did not improperly shift the burden of proof, counsel was not ineffective for failing to object.

## III.  Certificate of Appealability

Before a prisoner who has been denied habeas relief may file an appeal, the prisoner "must first seek and obtain a [certificate of appealability.]" *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  To receive a certificate of appealability, "a petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 336 (2003) (internal quotes and citations omitted).

Reasonable jurists would not find the Court's assessment of Petitioner's claims to be debatable or wrong. The Court therefore declines to issue a certificate of appealability.

## IV.  Conclusion

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas corpus and a certificate of appealability are **DENIED** and the matter is **DISMISSED WITH PREJUDICE.**

-18-

**IT IS FURTHER ORDERED** that Petitioner may proceed on appeal *in forma pauperis*.

**IT IS FURTHER ORDERED** that the Adam Douglas shall be substituted as the Respondent.

Dated:  September 15, 2022

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

| CERTIFICATE OF SERVICE |
| --- |
| Copies of this Order were served upon attorneys of record on September 15, 2022, by electronic and/or ordinary mail. |
| s/Brianna Sauve<br>Deputy Clerk |